UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL JOHN EAST,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>NEZ PERCE COUNTY SHERIFF'S DEPARTMENT; SHERIFF JOE RODRIGUEZ; SHERRY STOUTIN; PROVIDER ANITA RINGERING; R.N. DARAH GROGAN; DEPUTY VOGEL; WARDEN ALBERTO RAMIREZ; C/O MICHAELA LARIOS; C/O JEFFERY FUNK; PARALEGAL ALAN STEWART; ATTORNEY GENERAL LAWRENCE WASDEN; CORIZON MEDICAL; WILL ROGERS; SELAH WORLEY; TONYA McMILLAN; GEN BREWER; J. TEMONS; and RONA SIEGERT,<br><br>　　　　　　Defendants. | Case No. 1:20-cv-00260-DCN<br><br>**INITIAL REVIEW ORDER BY SCREENING JUDGE** |

The Clerk of Court conditionally filed Plaintiff Michael John East's Complaint (Dkt. 3) as a result of Plaintiff's status as an inmate and in forma pauperis request. After receiving returned mail that was undeliverable to Plaintiff, the Court issued a notice of intent to dismiss, instructing Plaintiff to update the Court with his current address. The Court then received an email from a paralegal informing the Court, on behalf of Plaintiff, that Plaintiff began drafting his Complaint when he was held in a county jail, but that he filed the complaint from state prison, where he is now incarcerated. Therefore, the Court

has noted Plaintiff's address change.

Plaintiff has also filed a document entitled "Affidavit of First Amended Complaint." *See* Dkt. 11. However, it appears that Plaintiff did not intend the document to constitute a formal amended complaint. An "amended complaint supersedes the original, the latter being treated thereafter as non-existent." *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997), *overruled in part on other grounds by Lacey v. Maricopa County*, 693 F.3d 896, (9th Cir. 2012) (en banc). Rather than setting forth all of Plaintiff's allegations in a single pleading—which is what an amended complaint would do—the document recently filed by Plaintiff simply adds (1) allegations pertaining to medical treatment Plaintiff has received since being transferred to state prison and (2) additional defendants. Therefore, the Court will construe the "Affidavit of First Amended Complaint" as a supplement to the Complaint, rather than an amendment. *See* Fed. R. Civ. P. 15(d) ("[T]he court may … permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."). That is, the Court will consider the Complaint and supplement together as the operative pleading.

The Court now reviews Plaintiff's Complaint (including the supplement) to determine whether it should be summarily dismissed in whole or in part under 28 U.S.C. §§ 1915 and 1915A. Having reviewed the record, and otherwise being fully informed, the Court enters the following Order directing Plaintiff to file a second amended complaint if Plaintiff intends to proceed.

## 1.     Screening Requirement

The Court must review complaints filed by prisoners seeking relief against a

governmental entity or an officer or employee of a governmental entity, as well as complaints filed in forma pauperis, to determine whether summary dismissal is appropriate. The Court must dismiss a complaint or any portion thereof that states a frivolous or malicious claim, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b).

## 2. Pleading Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[D]etailed factual allegations" are not required, but a plaintiff must offer "more than ... unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Id.* (internal quotation marks omitted). If the facts pleaded are "merely consistent with a defendant's liability," or if there is an "obvious alternative explanation" that would not result in liability, the complaint has not stated a claim for relief that is plausible on its face. *Id.* at 678, 682 (internal quotation marks omitted).

## 3. Factual Allegations

Plaintiff is a prisoner in the custody of the Idaho Department of Correction ("IDOC"), currently incarcerated at the Idaho State Correctional Institution ("ISCI"). The medical treatment Plaintiff describes in the Complaint began while he was confined in the

Nez Perce County Jail and has continued since Plaintiff's transfer to ISCI.

Plaintiff was on probation in a retained jurisdiction program for his stalking conviction when, in January 2020, he saw a medical provider who diagnosed him with a herniated disc at the L5 vertebra. *Compl.*, Dkt. 3, at 4; *see also State v. East*, Nez Perce County Case No. CR35-18-4403, *available at* the Nez Perce County iCourt Database, https://icourt.idaho.gov/. This issue causes Plaintiff serious pain, numbness in his extremities, and incontinence. The medical provider scheduled Plaintiff for a follow-up appointment and may have recommended surgery. *Compl.* at 4, 6. However, before that appointment could take place, Plaintiff was arrested on a probation violation and taken to the Nez Perce County Jail.[1] *See* iCourt Database, *State v. East*, Case No. CR35-18-4403. Plaintiff states that he needed a wheelchair at that time.

Plaintiff informed "medical" of his issues and requested his unidentified prescription medication, which Plaintiff's probation officer had provided to the jail. However, the unidentified jail medical provider who evaluated Plaintiff instead prescribed 400 milligrams of ibuprofen. *Compl.* at 6. This provider worked for Defendant Ivy Medical, which evidently is the private company providing inmates with medical treatment under contract with Nez Perce County.

Plaintiff was transferred to ISCI on March 19, 2020. *Suppl.*, Dkt. 11, at 2. Defendant Corizon is the private company providing state prisoners with medical treatment under contract with the IDOC.

---

[1] A state court judge later revoked Plaintiff's probation and reimposed his underlying sentence.

INITIAL REVIEW ORDER BY SCREENING JUDGE - 4

Plaintiff requested medical shoes to help with his "neuropathy pain." *Compl*. at 6. On April 20, 2020, P.A. Anita Ringering told Plaintiff that Sherry Stoutin—the Director of Ivy Medical—had denied Plaintiff's request for medical shoes. *Id*. at 10.

At the same appointment, Plaintiff complained to Ringering about his continued incontinence. Ringering replied, "Oh, you probably just have an enlarged prostate …. When women get older we pee our pant's [sic] when we laugh, so it's nothing to worry about." *Id*. at 10. The only treatment Plaintiff has received for his incontinence is an adult diaper. *Id*. at 6.

Plaintiff pursued the grievance process with respect to his medical treatment. Plaintiff states that once that process was concluded—on an unidentified date—Defendants Ringering, Stoutin, and R.N. Darah Grogan "have since refused [Plaintiff] any further relief." *Id*. at 9.

Plaintiff also asserts that Deputy Vogel has interfered with Plaintiff's use of the grievance process "by taking [Plaintiff's] papers & refusing to return them to [him,] stating 'stop whining about it.'" *Id*. at 9. Vogel also allegedly "refus[ed] to file them as he stated he would." *Id*. at 8. However, Plaintiff was informed that the administrative grievance process was complete. Sheriff Rodriguez purportedly "failed to hold [Defendant] Vogel accountable for this malicious harassment & interference of Plaintiff's due process." *Id*.

Plaintiff complains that the pain in his back and the pinching of his nerves are getting worse. He states that his leg "has deteriorated by @ least 1/3"; that his "buttocks and genitals are constantly numb"; and that when he sits down, his feet "instantly swell, turn purple, & lose pulse." *Id*. at 6. Plaintiff also experiences shame, embarrassment, and

humiliation due to having to wear an adult diaper.

Plaintiff also alleges that, since he was transferred to state prison, he "has continually made all medical staff aware of injury and constant pain and incontinence, [and] the need for surgical repair," but that treatment has been delayed and that his condition has worsened. *Suppl.* at 1. He states that unidentified "security staff" have interfered with his treatment by "refusing to allow [Plaintiff] to get ice prescribed by medical … or to simply make a phone call when their [sic] was some confusion as to [his] 'ice memo.'" *Id.* at 2.

Plaintiff alleges that his medical treatment at the Nez Perce County Jail and at ISCI has been constitutionally inadequate.

## 4.    Discussion

Plaintiff has not alleged sufficient facts to proceed with the Complaint. The Court will, however, grant Plaintiff 60 days to amend the Complaint. Any amended complaint should take into consideration the following.

### A.    *Standards of Law*

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To be liable under § 1983, "the defendant must possess a purposeful, a knowing, or possibly a reckless state of mind." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015). Negligence is not actionable under § 1983, because a negligent act by a public official is not an abuse

of governmental power but merely a "failure to measure up to the conduct of a reasonable person." *Daniels v. Williams*, 474 U.S. 327, 332 (1986).

Jail officials and jail medical providers generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045.

However, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists ... a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). A plaintiff can establish this causal connection by alleging that a defendant (1) "set[] in motion a series of acts by others"; (2) "knowingly refus[ed] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury"; (3) failed to act or improperly acted in the training, supervision, or control of his subordinates"; (4) "acquiesc[ed] in the constitutional deprivation"; or (5) engag[ed] in "conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 1205–09. A plaintiff may also seek injunctive relief from officials who have direct responsibility in the area in which the plaintiff seeks relief. *See Rounds v. Or. State Bd. of Higher Educ.*, 166 F.3d 1032, 1036 (9th Cir. 1999).

To bring a § 1983 claim against a local governmental entity (such as Nez Perce County) or a private entity performing a government function (such as Ivy Medical), a plaintiff must allege that the execution of an official policy or unofficial custom inflicted the injury of which the plaintiff complains, as required by *Monell v. Department of Social Services of New York*, 436 U.S. 658, 694 (1978). *See also Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (applying *Monell* to private entities performing a government function). Under *Monell*, the requisite elements of a § 1983 claim against a local governmental entity or private entity performing a state function are the following: (1) the plaintiff was deprived of a constitutional right; (2) the entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001). Further, a municipality or private entity performing a state function "may be held liable under § 1983 when the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010), *overruled in part on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc).

An unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–168 (1970)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon

practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

A claim that a supervisor or training official failed to adequately train subordinates ordinarily requires that, "in light of the duties assigned to specific officers or employees[,] the need for more or different training [was] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the [supervisor or training official] can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). That is, to maintain a failure-to-train claim, a plaintiff must allege facts showing a "pattern of violations" that amounts to deliberate indifference. *Connick v. Thompson*, 563 U.S. 51, 72 (2011).

Likewise, "a failure to supervise that is sufficiently inadequate may amount to deliberate indifference" that supports a § 1983 claim, but there generally must be a pattern of violations sufficient to render the need for further supervision obvious. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (internal quotation marks omitted). That is, if a supervisory or training official had "knowledge of the unconstitutional conditions" through such a pattern of violations—including knowledge of the "culpable actions of his subordinates"—yet failed to act to remedy those conditions, that official can be said to have acquiesced "in the unconstitutional conduct of his subordinates" such that a causal connection between the supervisor and the constitutional violation is plausible. *Starr*, 652 F.3d at 1208.

An official whose only involvement in an inmate's constitutional claim was as a

participant in the administrative grievance process generally is not subject to liability under § 1983. For example, an appeals coordinator cannot cause or contribute to a completed constitutional violation that occurred in the past and that is not remediable by any action the reviewer might take. *See, e.g., George v. Smith*, 507 F.3d 605, 609–610 (7th Cir. 2007) ("A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not."). If, however, the defendant (1) knew of an ongoing constitutional violation, and (2) "had the authority and opportunity to prevent" that violation, yet (3) failed to act to remedy the violation, then the defendant may be liable under § 1983. *See Herrera v. Hall*, No. 1:08CV01882LJOSKOPC, 2010 WL 2791586, at *4 (E.D. Cal. July 14, 2010) (citing *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989), *report and recomm'n adopted*, 2010 WL 3430412 (E.D. Cal. Aug. 30, 2010).¡

A plaintiff cannot simply restate these standards of law in a complaint. Instead, a plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and Plaintiff's injury or damage. Alleging "the mere possibility of misconduct" is not enough. *Iqbal*, 556 U.S. at 679.

### B.    *The Complaint Does Not State a Plausible Claim under § 1983*

#### i.    <u>Eighth Amendment Medical Treatment Claims</u>

Plaintiff asserts claims under the Eighth Amendment to the United States Constitution, which protects prisoners against cruel and unusual punishment. *Compl*. at 3.

To state a claim under the Eighth Amendment, prisoners must plausibly allege that they are "incarcerated under conditions posing a substantial risk of serious harm," or that

they have been deprived of "the minimal civilized measure of life's necessities" as a result of the defendants' actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). An Eighth Amendment claim requires the plaintiff to satisfy both (1) an objective standard, "that the deprivation was serious enough to constitute cruel and unusual punishment," and (2) a subjective standard, that the defendant acted with "deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc). The Eighth Amendment includes the right to adequate medical and mental health treatment in jail or prison, and jail officials or jail medical providers can be held liable if their "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Regarding the objective standard for prisoners' medical care claims, "society does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Therefore, "deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* The Ninth Circuit has defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain[;] ... [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain ....

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992) (internal citations omitted), *overruled on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en

banc).

As to the subjective standard, "deliberate indifference entails something more than mere negligence, [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. A prison official or prison medical provider acts with deliberate indifference "only if the [prison official or provider] knows of and disregards an excessive risk to inmate health and safety." *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002) (internal quotation marks omitted), *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Farmer*, 511 U.S. at 837).

In the medical context, deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05 (footnotes omitted). Medical malpractice or negligence does not support a cause of action under the Eighth Amendment, *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (per curiam), and a delay in medical treatment does not violate the Eighth Amendment unless that delay causes further harm, *McGuckin*, 974 F.2d at 1060. Additionally, there is no constitutional right to an outside medical provider of one's own choice. *See Roberts v. Spalding,* 783 F.2d 867, 870 (9th Cir. 1986) ("A prison inmate has no independent constitutional right to outside medical care

additional and supplemental to the medical care provided by the prison staff within the institution.").

"If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Gibson*, 290 F.3d at 1188. Moreover, even prison officials or medical providers who *did* actually know of a substantial risk to inmate health will not be liable under § 1983 "if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. If medical personnel have been "consistently responsive to [the inmate's] medical needs," and the plaintiff has not shown that the medical personnel had "subjective knowledge and conscious disregard of a substantial risk of serious injury," there has been no Eighth Amendment violation. *Toguchi*, 391 F.3d at 1061.

Differences in judgment as to appropriate medical diagnosis and treatment between an inmate and prison medical providers—or, for that matter, between medical providers—are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). "[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk' to the prisoner's health." *Toguchi*, 391 F.3d at 1058 (alteration omitted) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). Stated another way, a plaintiff must plausibly allege that medical providers chose one treatment over the plaintiff's preferred treatment "even though they knew [the plaintiff's preferred treatment] to be medically necessary based on [the plaintiff's] records and prevailing medical

standards." *Norsworthy v. Beard*, 87 F. Supp. 3d 1104, 1117 (N.D. Cal. 2015).

Even if a prison medical provider's recommendation happens to be less expensive than what an inmate wants—and, therefore, more profitable to the entity providing that treatment—the recommendation does not constitute deliberate indifference unless it "was so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances." *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 989 (7th Cir. 1998). A business providing medical treatment to prisoners may use legitimate means to cut costs and maximize profits where it can—much like most insurance companies in the health care industry in the outside world—so long as minimum constitutional requirements are met. *See Zingg v. Groblewski*, 907 F.3d 630, 638 (1st Cir. 2018) (holding that there is no "per se Eighth Amendment prohibition against corrections officials considering cost, even when considered only in the course of selecting treatment that is aimed at attending to an incarcerated person's serious medical needs").

Non-medical prison personnel generally are entitled to rely on the opinions of medical professionals with respect to the medical treatment of an inmate. However, if "a reasonable person would likely determine [the medical treatment] to be inferior," the fact that an official is not medically trained will not shield that official from liability for deliberate indifference. *Snow*, 681 F.3d at 986 (internal quotation marks omitted); *see also McGee v. Adams*, 721 F.3d 474, 483 (7th Cir. 2013) (stating that non-medical personnel may rely on medical opinions of health care professionals unless "they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not

treating) a prisoner") (internal quotation marks omitted).

a)      *Analysis of Allegations in the Complaint*

The Complaint fails to state a plausible Eighth Amendment claim based on Plaintiff's medical treatment at the jail and prison. Plaintiff's allegations give rise to a reasonable inference that, at most, the initial jail medical provider disagreed with Plaintiff's previous provider as to appropriate medication. As for other medical staff who have refused Plaintiff's requests for surgery and medical shoes, the Complaint again plausibly alleges, at most, that these providers either disagreed with the recommendations of Plaintiff's previous provider or disagreed with Plaintiff as to what was medically necessary for his treatment.

Further, Plaintiff was under the care of medical providers at the county jail for less than one month. Evaluation of a patient's ongoing medical problems—particularly the suitability of surgery—takes a long time even in the outside world, due to health insurance companies' specific rules and often limited coverage for procedures. Prison is not, and should not be, different. Taxpayer funds are used for all inmate health care. The medical providers owe a duty to prisoners—and, to a lesser extent, the taxpayers—to use conservative treatment when practical, and to carefully commit resources to more expensive procedures where necessary and when conservative treatments have failed. Surgeries have their own inherent risks that can be avoided through conservative treatments. Surgeries also often have lengthy healing periods that can vary according to the individual. Taxpayers themselves are subjected to this same course of required trial-by-error treatment and required approvals by insurance companies.

As for Plaintiff's incontinence, the Eighth Amendment does not protect inmates from embarrassment or shame resulting from a medical treatment. There is no indication that the decision to provide Plaintiff only with adult diapers, instead of surgery or some other treatment for incontinence, was "medically unacceptable under the circumstances" or was recommended "in conscious disregard of an excessive risk" to Plaintiff's health. *Toguchi*, 391 F.3d at 1058.

Plaintiff's claims against Nez Perce County are implausible for an additional reason. The allegations in the Complaint do not support a reasonable inference that Plaintiff's course of medical treatment resulted from a policy or custom of the county, as opposed to the independent judgment of Plaintiff's treating providers. *See Monell*, 436 U.S. at 694.

b)      *Analysis of Allegations in Supplement*

Plaintiff's supplement does not contain any specific allegations against a particular defendant. Instead, Plaintiff alleges that "security staff" have interfered with his treatment, that he has made "all medical staff" aware of his dissatisfaction with his treatment, and that medical treatment has been delayed. *See* Dkt. 11. To the extent these allegations can be construed as asserting a claim against Corizon, the claims fails for the same reason as Plaintiff's claims against Nez Perce County—the Complaint and supplement do not contain sufficient information to raise a plausible inference that Plaintiff's allegedly inadequate medical treatment was the result of a custom or policy of Corizon, rather than the judgment of Plaintiff's providers.

Moreover, Plaintiff cannot state a plausible § 1983 claim simply by listing defendants, as he has done in the supplement. Rather, he must link each named defendant

to each allegedly unconstitutional act.

For these reasons, the allegations in the Complaint and supplement do not state a plausible Eighth Amendment claim.

     ii.     <u>Potential First Amendment Claim</u>

Plaintiff does not expressly assert a claim based on Deputy Vogel's actions with respect to Plaintiff's grievance paperwork. However, the allegations in the Complaint suggest that Plaintiff may be intending to assert such a claim.

The First Amendment to the United States Constitution includes the right to petition the government for redress of grievances. This right to petition applies to incarcerated individuals and includes the right to use a jail or prison grievance process, if such a process exists. *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995), *abrogated on other grounds by Shaw v. Murphy*, 532 U.S. 223, 230 n.2 (2001).

In *Turner v. Safley*, 482 U.S. 78 (1987), the U.S. Supreme Court outlined the legal standard governing First Amendment claims of incarcerated individuals. In that case, the Court examined the issue in the context of prison officials prohibiting correspondence between inmates residing at different state institutions. The *Turner* Court held that when a prison regulation or official action "impinges on inmates' constitutional rights, the regulation [or action] is valid if it is reasonably related to legitimate penological interests." *Id.* at 89. The Court identified four factors to consider when determining whether such a regulation is valid: (1) whether there is a "rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) whether "there are alternative means of exercising the right that remain open to prison inmates"; (3) what

"impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether "ready alternatives" at a "de minimis cost" exist, which "may be evidence that the regulation is not reasonable, but is an exaggerated response to prison concerns." *Id.* at 89–93.

The *Turner* analysis appropriately allows prison officials substantial leeway in the management of their prisons because "[s]ubjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration." *Id.* at 89. Federal courts must "accord great deference to prison officials' assessments of their interests" in applying the *Turner* test. *Michenfelder v. Sumner*, 860 F.2d 328, 331 (9th Cir. 1988).

The Complaint does not state a plausible right-to-petition claim. Plaintiff acknowledges that he completed the grievance process with respect to his complaints about his medical treatment. Thus, there is nothing in the Complaint to suggest that any official action resulted in an injury to Plaintiff's right to petition the government for redress.

### iii.    Claims against the IDOC

The Eleventh Amendment prohibits a federal court from entertaining a suit brought by a citizen against a state or state entity absent a waiver of state sovereign immunity. *Hans v. Louisiana*, 134 U.S. 1, 16-18 (1890); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Section 1983 does not constitute such a waiver. *Quern v. Jordan*, 440 U.S. 332, 342–44 (1979). Nor has Idaho itself waived its sovereign immunity for constitutional claims. *Esquibel v. Idaho*, No. 1:11-cv-00606-BLW, 2012 WL 1410105, at

*6 (D. Idaho Apr. 23, 2012) (unpublished). Finally, only a "person" may be sued pursuant to 42 U.S.C. § 1983, and a state is not considered a "person" under that statute. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, Plaintiff should omit the IDOC from any second amended complaint.

**5.     Standards for Second Amended Complaint**

If Plaintiff chooses to file a second amended complaint, Plaintiff must demonstrate how the actions complained of have resulted in a deprivation of Plaintiff's constitutional rights. *See Ellis v. Cassidy*, 625 F.2d 227, 229 (9th Cir. 1980), *abrogated on other grounds by Kay v. Ehler*, 499 U.S. 432 (1991). Plaintiff must also allege a sufficient causal connection between each defendant's actions and the claimed deprivation. *Taylor*, 880 F.2d at 1045; *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss" or to survive screening under 28 U.S.C. §§ 1915 and 1915A. *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *see also Iqbal*, 556 U.S. at 678 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." (internal quotation marks and alteration omitted)).

Rather, for each cause of action against each defendant, Plaintiff must state the following: (1) the name of the person or entity that caused the alleged deprivation of Plaintiff's constitutional rights; (2) facts showing the defendant is a state actor (such as state employment or a state contract) or a private entity performing a state function; (3) the dates on which the conduct of the defendant allegedly took place; (4) the specific conduct or action Plaintiff alleges is unconstitutional; (5) the particular federal constitutional

provision (or state law provision) Plaintiff alleges has been violated; (6) facts alleging that the elements of the violation are met; (7) the injury or damages Plaintiff personally suffered; and (8) the particular type of relief Plaintiff is seeking from each defendant. In addition, Plaintiff must include facts showing that Plaintiff can meet the *Monell* requirements if Plaintiff continues to name Nez Perce County and Corizon as Defendants.

Further, any second amended complaint must contain all of Plaintiff's allegations in a single pleading and cannot rely upon, attach, or incorporate by reference other pleadings or documents. Dist. Idaho Loc. Civ. R. 15.1 ("Any amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended. The proposed amended pleading must be submitted at the time of filing a motion to amend."); *see also Forsyth*, 114 F.3d at 1474; *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint).

Plaintiff must set forth each different factual allegation in a separate numbered paragraph. The amendment must be legibly written or typed in its entirety, and it should be clearly designated as the "Second Amended Complaint." Plaintiff's name and address should be clearly printed at the top left corner of the first page of each document filed with the Court.

If Plaintiff files a second amended complaint, Plaintiff must also file a "Motion to Review the Second Amended Complaint." If Plaintiff does not amend within 60 days, or if the amendment does not comply with Rule 8, this case may be dismissed without further

notice. *See Knapp v. Hogan*, 738 F.3d 1106, 1110 (9th Cir. 2013) ("When a litigant knowingly and repeatedly refuses to conform his pleadings to the requirements of the Federal Rules, it is reasonable to conclude that the litigant simply *cannot* state a claim.").

## ORDER

**IT IS ORDERED:**

1.     The Complaint fails to state a claim upon which relief may be granted. Plaintiff has 60 days within which to file a second amended complaint as described above. If Plaintiff does so, Plaintiff must file (along with the amended complaint) a Motion to Review the Second Amended Complaint.

2.     If Plaintiff does not amend within 60 days, this case may be dismissed without further notice. Alternatively, Plaintiff may file a Notice of Voluntary Dismissal if Plaintiff no longer intends to pursue this case.[2]

DATED: October 7, 2020

David C. Nye
Chief U.S. District Court Judge

---

[2] A voluntary dismissal under Federal Rule of Civil Procedure 41(a)(1) is not a dismissal for frivolity, for maliciousness, or for failure to state a claim upon which relief may be granted and, therefore, does not count as a "strike" under 28 U.S.C. § 1915(g).