UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL JOHN EAST,<br><br>              Plaintiff,<br><br>    v.<br><br>NEZ PERCE COUNTY SHERIFF'S DEPARTMENT; SHERIFF JOE RODRIGUEZ; SHERRY STOUTIN; IVY MEDICAL; ANITA RINGERING; DARAH GROGAN; IDAHO DEPARTMENT OF CORRECTION; WARDEN ALBERTO RAMIREZ; IDAHO ATTORNEY GENERAL LAWRENCE WASDEN; CORIZON MEDICAL; WILL ROGERS; SELAH WORLEY; RONA SIEGERT; JONI LEMONS; GEN BREWER; TAWNYA MCMILLAN; and NEZ PERCE COUNTY,<br><br>              Defendants. | Case No. 1:20-cv-00260-DCN<br><br>**SUCCESSIVE REVIEW ORDER BY SCREENING JUDGE** |

       Plaintiff Michael John East is a prisoner proceeding pro se and in forma pauperis in this civil rights action. The Court previously reviewed Plaintiff's first amended complaint pursuant to 28 U.S.C. §§ 1915 and 1915A, determined that it failed to state a claim upon which relief could be granted, and allowed Plaintiff an additional opportunity to amend. *See* Initial Review Order, Dkt. 13.

       Plaintiff has now filed a Second Amended Complaint. *See* Dkt. 16-1. The Court retains its screening authority pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b).

Having reviewed the Second Amended Complaint, the Court concludes that Plaintiff has failed to remedy the deficiencies in the first amended complaint, and the Court will dismiss this case pursuant to 28 U.S.C. §§ 1915 and 1915A.

1.     **Motion for Appointment of Counsel**

Plaintiff seeks appointment of counsel. *See* Dkt. 15. Unlike criminal defendants, prisoners and indigents in civil actions have no constitutional right to counsel unless their physical liberty is at stake. *Lassiter v. Dep't of Social Services*, 452 U.S. 18, 25 (1981). Whether a court appoints counsel for indigent litigants is within the court's discretion. *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986).

In civil cases, counsel should be appointed only in "exceptional circumstances." *Id*. To determine whether exceptional circumstances exist, the court should evaluate two factors: (1) the likelihood of success on the merits of the case, and (2) the ability of the plaintiff to articulate his claims pro se in light of the complexity of legal issues involved. *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). Neither factor is dispositive, and both must be evaluated together. *Id*. Further, an attorney cannot be forced to represent an indigent litigant in a civil case—rather, the attorney can only be "appointed" if he or she voluntarily accepts the appointment. *See Mallard v. U.S. Dist. Court for S. Dist. of Iowa*, 490 U.S. 296, 298 (1989) (holding that the appointment of counsel provision in § 1915, formerly found in subsection (d), does not "authorize[] a federal court to require an unwilling attorney to represent an indigent litigant in a civil case"); *Veenstra v. Idaho State Bd. of Corr.*, Case No. 1:15-cv-00270-EJL (D. Idaho May 4, 2017) ("[The Court] does not have inherent authority to compel an attorney to represent Plaintiffs pro bono.").

SUCCESSIVE REVIEW ORDER BY SCREENING JUDGE - 2

The legal issues in this matter are not complex, and Plaintiff has been able to file documents with the Court and protect his interests to date. In addition, as the Court concludes below, the Second Amended Complaint fails to state a claim upon which relief may be granted; therefore, Plaintiff does not have a likelihood of success on the merits. Accordingly, the Court will deny Plaintiff's Motion for Appointment of Counsel.

**2.      Screening Requirement**

As explained in the Initial Review Order, the Court must dismiss a prisoner or in forma pauperis complaint—or any portion thereof—that states a frivolous or malicious claim, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(d)(2) & 1915A(b).

**3.      Pleading Standard**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint fails to state a claim for relief under Rule 8 if the factual assertions in the complaint, taken as true, are insufficient for the reviewing court plausibly "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[D]etailed factual allegations" are not required, but a plaintiff must offer "more than ... unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Id.* (internal quotation marks omitted). If the facts pleaded are "merely consistent with a defendant's liability," or if there is an "obvious alternative explanation" that would not result in liability, the complaint has not stated a claim for relief that is plausible on its face. *Id.* at 678, 682 (internal quotation

marks omitted). And, a court is not required to comb through a plaintiff's exhibits or other filings to determine if the complaint states a plausible claim.

4.      **Factual Allegations**

Plaintiff is a prisoner in the custody of the Idaho Department of Correction ("IDOC"), currently incarcerated at the Idaho State Correctional Institution ("ISCI"). The events described in the Second Amended Complaint began while Plaintiff was confined in the Nez Perce County Jail and continued after he was transferred to ISCI. At all times relevant to his claims, however, Plaintiff was considered to be in the custody of the IDOC, either on a probation violation or after reimposition of his underlying sentence following a probation revocation.

Before Plaintiff was taken into custody on February 26, 2020, he had been diagnosed with a herniated L5 vertebra, which causes Plaintiff serious pain, numbness, and incontinence. Nez Perce County Jail deputies "were informed of the injury." *SAC*, Dkt. 16-1, at 7. Plaintiff alleges that jail employees, including the sheriff, and jail medical providers—who work for Ivy Medical, the county's contracted medical provider—did not ensure that Plaintiff was given adequate medical treatment for his injury. *Id*. at 7–8.

Jail medical providers had access to Plaintiff's previous MRI images. They also had access to the "medical condition and treatment plan" that Plaintiff had previously received from Lewiston Orthopedics/Catalyst Medical Group, but evidently did not follow that plan. *Id*. at 9. Specifically, the plan called for an evaluation at Interventional Pain Consultants and potentially injections for Plaintiff, but jail medical staff did not follow this treatment plan. *Id*.

On March 6, 2020, Plaintiff was examined by a non-defendant nurse for what Plaintiff describes as his "feet being purple with no pulse and incontinence." *Id*. at 10. This nurse notified Defendant Grogan, who did not provide additional treatment. In late April 2020, Defendant Ringering "deemed Plaintiff [as] not requiring any further treatment." *Id*.

Plaintiff was transferred to ISCI on April 30, 2020. *Id*. at 8. The medical providers at ISCI work for Corizon, IDOC's contract medical provider, and had access to the same MRI images as medical staff at the Nez Perce County Jail. Plaintiff states that he was not given adequate medical treatment until September 4, 2020, when he was evaluated by an outside medical provider. *Id*. Plaintiff alleges that IDOC's Health Services Director, Rona Siegert, caused this "delay" and that the delay violated the Constitution.

The outside provider, Dr. Kenneth Little, looked at the same MRI images that had been previously reviewed by jail and prison medical staff. *Id*. at 8, 11. Dr. Little recommended surgery, stating, "I can't believe you've been left in this condition for so long. I'll have you in surgery within 3 weeks providing IDOC and medical there will cooperate." *Id*. at 11. The surgery was performed on September 25, 2020. *Id*. at 8.

Plaintiff asserts claims under the Eighth Amendment to the Constitution,[1] as well as claims under the Americans with Disabilities Act ("ADA"). *Id*. at 7.

---

[1] Plaintiff also cites the First and Fifth Amendments. *SAC* at 7. However, as the Court explained in the Initial Review Order, Plaintiff's First Amendment right-to-petition claims are implausible because Plaintiff acknowledges that he completed the grievance process. *See* Dkt. 13 at 17–18. In addition, the Fifth Amendment guarantees (1) the right to a grand jury in federal criminal cases, (2) the right not to be subject to double jeopardy, (3) the right to be free from compelled self-incrimination, (4) the right to due process from the federal government, and (5) the right to compensation from the taking of private property for public use, and none of these rights are implicated by any allegations in the Second Amended Complaint.

5.     **Discussion**

   *A.     Section 1983 Claims*

   Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute. To state a plausible civil rights claim, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To be liable under § 1983, "the defendant must possess a purposeful, a knowing, or possibly a reckless state of mind." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015). Negligence is not actionable under § 1983, because a negligent act by a public official is not an abuse of governmental power but merely a "failure to measure up to the conduct of a reasonable person." *Daniels v. Williams*, 474 U.S. 327, 332 (1986).

   The Court previously explained the legal standard for claims of inadequate medical treatment under the Eighth Amendment. *See* Dkt. 13. Under that standard, Plaintiff has failed to state a plausible Eighth Amendment claim because the allegations in the Second Amended Complaint do not raise a reasonable inference that any Defendant (1) was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]," (2) actually drew the inference, and (3) failed to respond reasonably to that risk. *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (internal quotation marks omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 844 (1994) ("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.").

   Instead, the Second Amended Complaint plausibly alleges, at most, only that

medical providers at the jail and prison disagreed with previous medical providers as to appropriate treatment, and that, from February to September 2020, they did not subjectively believe that the previous treatment plan or surgery was medically necessary for Plaintiff. This relatively brief period of time—only seven months from initial examination to surgical intervention—is similar to, or even shorter than, what outside citizens might experience when they seek medical treatment. Even outside of prison, medical providers generally attempt conservative treatment first, and only if such conservative treatment is ineffective do providers contemplate more serious and invasive options such as surgery. As the Court previously stated:

> Taxpayer funds are used for all inmate health care. The medical providers owe a duty to prisoners—and, to a lesser extent, the taxpayers—to use conservative treatment when practical, and to carefully commit resources to more expensive procedures where necessary and when conservative treatments have failed. Surgeries have their own inherent risks that can be avoided through conservative treatments. Surgeries also often have lengthy healing periods that can vary according to the individual. Taxpayers themselves are subjected to this same course of required trial-by-error treatment and required approvals by insurance companies.

*See* Dkt. 13 at 15. That Plaintiff's jail and prison medical providers disagreed with the treatment plan made by Plaintiff's outside providers does not mean they acted with the subjective mental state required for an Eighth Amendment violation. Nor does the fact that surgery was eventually performed show that, at the time of their medical decisions as to Plaintiff's treatment, jail and prison medical providers deliberately disregarded a substantial risk of serious harm.

Plaintiff's allegations do not reasonably suggest that any Defendant acted with

deliberate indifference to Plaintiff's medical needs. Therefore, his Eighth Amendment claims are implausible.

**B.     *ADA Claims***

Plaintiff also asserts claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. The ADA generally prohibits discrimination on the basis of an individual's disability.

In order to proceed with an ADA claim, Plaintiff must plausibly allege (1) that he has a disability; (2) that he is otherwise qualified to participate in or receive a public entity's services, programs, or activities; (3) that he was denied the benefits of those services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) that such exclusion, denial of benefits, or discrimination was *by reason of* his disability. *See Weinreich v. Los Angeles Cnty. Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997).

Under the ADA, governmental entities are required to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7). "The ADA does not require perfect parity among programs offered by various facilities that are operated by the same umbrella institution. But an inmate cannot be categorically excluded from a beneficial prison program based on his or her disability alone." *Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1221 (9th Cir. 2008).

Plaintiff has not alleged any facts that would support a claim under the ADA.

Plaintiffs states that he is a qualified individual with a disability, but he points to no action on the part of any Defendant that constitutes discrimination *on account of* that disability. The ADA is not a remedy for inadequate medical treatment. *See Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1022 (9th Cir. 2010) (citing *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("The ADA does not create a remedy for medical malpractice.")). As a result, Plaintiff's ADA claims are implausible.

6.    **Conclusion**

For the foregoing reasons, the Second Amended Complaint is subject to dismissal for failure to state a claim upon which relief may be granted. Although pro se pleadings must be liberally construed, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Because Plaintiff has already amended his complaint twice and still has failed to state a plausible claim for relief, the Court will dismiss the Amended Complaint with prejudice and without further leave to amend. *See Knapp v. Hogan*, 738 F.3d 1106, 1110 (9th Cir. 2013) ("When a litigant knowingly and repeatedly refuses to conform his pleadings to the requirements of the Federal Rules, it is reasonable to conclude that the litigant simply *cannot* state a claim.").

**ORDER**

**IT IS ORDERED:**

1.    Because Plaintiff's Second Amended Complaint was timely filed, Plaintiff's Motion for Extension of Time (Dkt. 14) is MOOT.

2.    Plaintiff's Motion for Appointment of Counsel (Dkt. 15) is DENIED.

3.    Plaintiff's Motion to Review the Second Amended Complaint (Dkt. 16) is

GRANTED.

4.    The Second Amended Complaint fails to state a claim upon which relief may

be granted. Therefore, for the reasons stated in this Order and the Initial

Review Order (Dkt. 13), this entire case is DISMISSED with prejudice

pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1).

DATED: March 8, 2021

David C. Nye
Chief U.S. District Court Judge